In the Matter of Jerry Richard DEPOY, Patricia Ann Depoy, Debtors.

**Wesley G. KIPP, Jo Ann Kipp, Plaintiffs,**

v.

**Jerry Richard DEPOY, Patricia Ann Depoy, Defendants.**

Bankruptcy No. 81–31356.
Adv. No. 82–3025.

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

Feb. 28, 1983.

Hugo Bamberth, LaPorte, Ind., for plaintiffs.

Tedd E. Mishler, Michigan City, Ind., for debtor/defendants.

## ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

This matter is before the Court on the amended complaint of Mr. and Mrs. Kipp (plaintiffs hereafter) for relief from stay in order to obtain possession of a certain piece of real estate that they had leased to the debtors. For a remedy the plaintiffs request relief from the stay now in effect and an order directing the debtors to surrender possession of the realty to the plaintiffs.

## FINDINGS OF FACT

From a review of the entire record in this case, including a Stipulation of Facts, the Court makes the following findings of fact. The debtors and their children have been month-to-month tenants on an oral lease of the premises located at 302 Grove Street, LaPorte, Indiana, for a number of years. The plaintiffs purchased said real estate in August of 1980, subject to debtors' tenancy.

The terms of the tenancy include that the debtors are to pay $250 per month, payable in advance on the 22nd day of each month. The plaintiffs are to pay for water, sewage, real estate taxes, and insurance. The debtors were to pay all other utilities.

The debtors had made a payment on November 9, 1981, to bring the rent paid through November 22, 1981. For the purposes of this matter no payment was made thereafter until done so following confirmation of the debtors' Chapter 13 plan in January of 1982. By letter dated December 3, 1981, plaintiffs informed debtors that if delinquent rent was not paid by December 14, 1981, eviction papers would be filed in state court.

On December 10, 1981, the debtors filed a Chapter 13 petition in bankruptcy. At the time of this filing the debtors were in default on their rent, which was due, in advance, on November 22, 1981. On December 15, 1981, the plaintiffs, without knowledge of the debtors' bankruptcy, filed a complaint for possession in state court.

On January 14, 1982, the Court approved the debtors' Chapter 13 plan, which provides for 100% payment of all creditors, including the plaintiffs, who were to be paid the arrears in rent and an amount paid by plaintiffs for utilities within the plan and rent kept current outside the plan by paying same to the plaintiffs. The plaintiffs did not reject the plan, nor did they object to confirmation.

Following confirmation of the plan, the trustee has made distributions to the plaintiffs, and the debtors paid current rent outside the plan. The plaintiffs' attorney has held these checks without cashing them in order to support plaintiffs' position that they have not re-created a tenancy.

Recently the plaintiffs sought immediate relief from stay due to the fact that the debtors were not keeping current in the rent payments. At the show cause hearing the debtors stated that they had been without work but did pay all arrears on that day. Thus the stay was continued in effect pending the outcome in this matter.

It is clear from the conduct of the parties that there has been no intention on the part of the plaintiffs to extend or to continue the tenancy of the debtors.

## CONCLUSIONS OF LAW

The plaintiffs contend that the debtors have no ownership interest in the realty, no equity, nor even a current lease. Further, the plaintiffs argue that since the debtors were in default prior to filing their bankruptcy on a month-to-month oral lease, the lease had terminated, and there was no lease interest to become property of the estate. Furthermore, they state that the debtors failed to present any evidence that this residence is necessary to the debtors' rehabilitation. Finally, the plaintiffs urge that if the Court allows the debtors to remain in possession this would, involuntarily, put a burden on plaintiffs' right to sell the property, to get possession, and to raise rents.

The debtors argue that plaintiffs' reference to Indiana landlord-tenant law misses the point that bankruptcy law controls here, and that law encourages reorganization, even when various state laws stand in the way. Further, the debtors say that since they were in possession at the time of the bankruptcy, the Court has the power to maintain them in possession in order to effectuate their reorganization. The debtors state that this residence has been their family home for years, and that their 100% repayment plan has left them with no extra money for relocating. Finally, the debtors contend that the plaintiffs' real reason for ousting the debtors is to punish them for their utilization of the bankruptcy laws.

■ This Court has jurisdiction over this matter to determine not only relief from

stay, but also to determine what rights, if any, the parties have to the real estate in question and to enter appropriate orders. *In the Matter of Lane Foods, Inc.,* 213 F.Supp. 133 (S.D.N.Y.1963). *See also,* 28 U.S.C. §§ 1471 and 1481 and Order of the United States District Court of the Northern District of Indiana dated December 23, 1982, adopting an amended General Rule 28 referring bankruptcy cases to the bankruptcy court. Further, the parties have agreed to this Court's jurisdiction to grant full relief in this matter.

■ The automatic stay of Bankruptcy Code Section 362 [1] applies in this case, because a possessory interest alone is sufficient to trigger that section's protection. *In the Matter of Lane Foods, Inc., supra,* at 136, citing *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 481, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940). *See also, In re Mimi's of Atlanta, Inc.,* 5 B.R. 623 (Bkrtcy.N.D.Ga. 1980); *In re GSVC Restaurant Corp.,* 3 B.R. 491 (Bkrtcy.S.D.N.Y.1980).

■ While debtors are correct that the Supremacy Clause provides the basis for the proposition that the federal bankruptcy law takes precedence over state laws when the two are in conflict, that is not to say that any state law that results in placing a burden on a debtor's reorganization is superseded by the Code's policy of favoring reorganization and fresh start. Rather, there must be a specific conflict, not otherwise resolved by the Code, before the Supremacy Clause comes into effect. There is no such conflict in this case.

■ The Code does provide that a debtor-in-possession can assume or reject an unexpired lease where the debtor can meet the requirements of Section 365.[2] However, it is essential that the lease has not terminated prior to bankruptcy in order for this section to be operative. *In re Easthampton Sand & Gravel Co., Inc.,* 25 B.R. 193 (Bkrtcy.E.D.N.Y.1982). Furthermore, the Code does provide that the commencement of a bankruptcy case creates an estate comprised of all legal or equitable interests of the debtor. 11 U.S.C.A. § 541 (West 1979). However, the estate succeeds to no more interest than the debtor had, and the estate takes its interest subject to the conditions under which the debtor held the interest. *In re Sivley,* 14 B.R. 905 (Bkrtcy. E.D.Tenn.1981); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. at 367 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

Thus bankruptcy law provides in this type of case that the automatic stay protects the debtors' right to possession, that the debtors can assume the lease herein if it was valid as of the date of bankruptcy, and that the estate created by bankruptcy is subject to the conditions under which the debtors held their interest.

■ Whether an interest of the debtors is property of the estate is a federal question. Nevertheless, the nature and existence of the debtors' right to property is determined by looking at state law. *In re Ford,* 3 B.R. 559 (Bkrtcy.D.Md.1980). *In re Wheeler,* 5 B.R. 600 (Bkrtcy.N.D.Ga.1980); *In re Darwin,* 22 B.R. 259 (Bkrtcy.E.D.N.Y.1982). Thus the Court is to look to Indiana law to determine what, if any, interest the debtors had in the lease herein at the time they filed their petition in bankruptcy.

■ Under Indiana law, when there is a month-to-month tenancy with rent due in advance each month, the tenancy is terminated when the rent has not been paid when due, and in these circumstances the landlord is not required to give any notice to quit prior to initiating repossession of the property. *Ingalls v. Bissot,* 25 Ind.App. 130, 57 N.E. 723 (Ind.App.1900); *Thomas v. Walmer,* 18 Ind.App. 112, 46 N.E. 695 (Ind. App.1897); Ind.Code Ann. § 32–7–1–7 (Burns 1980); *Lafayette Car Wash, Inc. v. Boes,* 258 Ind. 498, 282 N.E.2d 837 (Ind. 1972).

■ The facts in this case are that the debtors, month-to-month tenants with rent due in advance, were eighteen days in default of paying the current month's rent on

1. 11 U.S.C.A. § 362 (West 1979).

2. 11 U.S.C.A. § 365 (West 1979).

the day they filed their petition in bankruptcy. Thus at the time of filing, the debtors' lease had terminated, and they were holdovers. Further, the facts demonstrate that the landlord has not acquiesced in the holdover, and the acts of the landlord show no intention to extend the lease or to create a new tenancy. Accordingly, the Court concludes that at the time of filing of bankruptcy the debtors' lease had terminated, and the only interest they had in the property was possessory. The debtors have no legal or equitable interest in a lease for the premises herein.

Under the above set of circumstances, the Court concludes that the use of its power to stay acts of the landlord in order to resurrect or involuntarily create a tenancy over the life of the debtors' plan or any lengthy period of time would not be appropriate, even to assist the debtors in their rehabilitation and fresh start.

A bankruptcy court cannot resurrect a lease, even where the property concerned would be important to the debtor's rehabilitation. *In re Youngs*, 7 B.R. 69 (Bkrtcy.D. Mass.1980); *In re Darwin*, 22 B.R. 259 (Bkrtcy.E.D.N.Y.1982); *In the Matter of Lane Foods, Inc.*, 213 F.Supp. 133 (S.D.N.Y. 1963); *In re Victory Pipe Craftsmen, Inc.*, 8 B.R. 635 (Bkrtcy.N.D.Ill.1981); *In re Tenfield*, 12 B.R. 12 (Bkrtcy.E.D.Va.1981). In fact, some bankruptcy courts have held that necessity of the property to reorganization is irrelevant in deciding whether to lift the stay in a Chapter 13 case, since Code Section 362(d)(2) applies only in Chapter 11 cases. These courts conclude that in a Chapter 13 case only Code Section 362(d)(1) applies, which provides that the stay can be lifted for cause, including lack of adequate protection. *See, e.g., In re Feimster*, 3 B.R. 11 (Bkrtcy.N.D.Ga.1979).

The case law is extensive that where the lease has terminated prior to the filing of the bankruptcy petition, the debtor-in-possession acquires no interest in the lease. *In re GSVC Restaurant Corp.*, 3 B.R. 491 (Bkrtcy.S.D.N.Y.1980), *aff'd* 10 B.R. 300 (S.D.N.Y.1980); *In re Mimi's of Atlanta,*

*Inc.,* 5 B.R. 623 (Bkrtcy.N.D.Ga.1980); *In Re Racing Wheels, Inc.,* 5 B.R. 309 (Bkrtcy. M.D.Fla.1980). Further, if there is no lease at the time of filing bankruptcy, there can be no assumption of a lease under Code Section 365.[3] *In re Darwin,* 22 B.R. 259 (Bkrtcy.E.D.N.Y.1982).

Finally, in response to the debtors' argument that the plaintiffs have only sought eviction to punish the debtors for declaring bankruptcy, the Court notes that the facts demonstrate that the plaintiffs initiated state court action for eviction prior to any knowledge of the debtors' petition in bankruptcy. Further, the anti-discrimination provisions of Bankruptcy Code Section 525 apply to a governmental unit, not to private parties. 11 U.S.C.A. § 525 (West 1979).

Accordingly, the Court concludes that there was no valid lease at the time of the filing of bankruptcy, that there is no present interest of the estate in a lease, that there is no lease to assume, that it is inappropriate for the Bankruptcy Court to create a tenancy, and that the plaintiffs are entitled to relief from stay and eventual possession of the realty.

■ However, the Bankruptcy Court does have the power to protect the debtors' right to possession for a limited period in order to provide the debtors with sufficient time to renegotiate a lease or to find other suitable housing, as long as the landlord is compensated for the use and occupation of the premises. *In re Darwin, supra; In the Matter of Lane Foods, Inc.,* 213 F.Supp. 133 (S.D.N.Y.1963).

After a careful review of the needs of the parties, and after balancing the equities herein, the Court concludes that the automatic stay shall remain in effect until the earliest of the 22nd day of April, 1983, or the date the debtors voluntarily vacate the premises. The court considered the following factors to be significant in its balancing of the harm:

1. The debtors plan to pay the landlord 100% of arrears and to keep the rent

---

**3.** 11 U.S.C.A. § 365 (West 1979).

current outside the plan. As of the date of this decision, the debtors have complied with these provisions of their plan.

2. The debtors obviously have a need for a residence in order to carry out their plan. Accordingly, they need time to renegotiate a lease or find alternative housing.

3. The debtors have an approved plan that pays creditors 100%. This plan leaves the debtors with a very tight budget. Thus extra time is necessary for the debtors to be able to absorb the costs of relocating.

4. The debtors and their children have lived in this house for many years. They have established certain roots in the neighborhood and schools. They should have sufficient time to relocate in the same area, should they desire to do so.

5. Since this is the winter months, the debtors and their children should have sufficient time to assure that they will have utility service in whatever housing they arrange.

6. The debtor is an over-the-road truck driver, whose job takes him out of town for days at a time. Thus the debtor needs sufficient time to search for housing and make the relocation during days when he is in LaPorte.

7. The landlord will be getting the full value of his original contract with the debtors.

8. There is no evidence that the landlord has a new tenant who is willing to pay an increased rent and is seeking immediate occupancy.

9. As was established in a companion adversary in this bankruptcy case (Proceeding Number 82-3005), the landlord acted in violation of the stay contemptuously in attempts to evict the debtors prior to seeking relief from stay. Thus he does not come to this court of equity with clean hands.

Accordingly, the Court finds that the plaintiffs are entitled to relief from stay to the extent that the debtors are to surrender the premises either on a date of the debtors' choice, or on April 22, 1983, whichever comes first. Should the debtors surrender the premises prior to April 22, 1983, the rent due for that last month shall be on a pro rata basis. The debtors are directed to continue to comply with their approved plan during the period in which the stay is extended by making the monthly rent payments in advance on the 22nd day of each month. If the debtors surrender the premises prior to April 22, 1983, the plaintiffs are directed to refund the balance due to the debtors after making a pro rata computation for that last month's occupancy. Receipt and cashing of rent checks in this case will not result in the creation of a new tenancy.

SO ORDERED.